### Jesse Havron, Appellee, v. Shoal Creek Coal Company, Appellant.

1. MINES AND MINERALS, § 91*—*when mine examiner cannot recover for injuries resulting from failure to close cross-cuts.* In an action by an assistant mine examiner to recover for injuries resulting from an explosion of accumulated gases while engaged in examining a mine, alleged to have been caused by wilful failure of mine owner to comply with section 14 of Miners' Act, J. & A. ¶ 7488, requiring certain cross-cuts to be closed, *held* that trial court erred in refusing to direct a verdict for defendant for the reason that the declaration was based solely on a statute which the evidence shows was inapplicable to plaintiff in his employment, and even under allegations of neglect of a common law duty to plaintiff *held* that plaintiff would not be entitled to recover under evidence showing that plaintiff was inexcusably careless in making an examination of the mine with an open lamp.

2. MINES AND MINERALS, § 82*—*persons entitled to protection under the provisions of the Miners' Act.* Person employed as mine examiner under section 21 of Miners' Act, J. & A. ¶ 7495, does not come within the class entitled to protection under the provisions of section 14 of the Miners' Act, J. & A. ¶ 7488.

3. MINES AND MINERALS, § 82*—*"operative miners" within meaning of constitution.* Mine examiner is not an "operative miner" within the meaning of the constitutional provision, requiring "the legislature to pass such laws as may°be necessary for the protection of operative miners."

Appeal from the Circuit Court of Montgomery county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the October term, 1912. Reversed. Opinion filed October 16, 1913. *Certiorari* denied by Supreme Court (making opinion final).

W. B. McBRIDE, for appellant; MILLER & McDAVID and MASTIN & SHERLOCK, of counsel.

LANE & COOPER and HILL & BULLINGTON, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action on the case filed in the Montgomery Circuit Court by the appellee against the appellant Company, to recover for damages alleged to

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.

have been caused by the wilful failure of the appellant to comply with the provisions of paragraph "f" of section 14 of chapter 93, Hurd's R. S. 1911 (J. & A. ¶ 7488), entitled "Mines and Miners."

The cause was heard by the court and a jury, and a verdict was returned against appellant in the sum of fifteen hundred dollars and, after overruling motions for new trial and in arrest of the judgment, the court entered judgment in the amount of the verdict against appellant, whereupon the record was brought before us by appeal on the part of appellant.

The declaration charges, in substance, that appellant owned and was operating a certain coal mine at Panama, in said county, and that in the operation and construction thereof there were, among others, the third and fourth west entries which were inlet and outlet air courses; that the ends of the said entries were known as the face; that between the third and fourth entries were two cross-cuts open, the westward one being about sixty feet west of the first one, allowing the full current of air between the inlet and outlet air courses to circulate through it, and thus preventing the air from circulating through the first cross-cut nearest the said face of said inlet and outlet air courses; that appellant wilfully failed and neglected to close the cross-cut farthest from the face in said entries, as provided by said paragraph "f" of said chapter 93 J. & A. ¶ 7488 of the statute; that appellee was employed in said mine as assistant mine examiner, and while traveling through said mine to examine it, as requested by appellant to do at a point about thirty feet east of the cross-cut nearest the said face of said entry, suddenly, and without warning, certain gaseous substances which had at that time accumulated therein, by reason of the said eastward cross-cut being and remaining open, ignited and exploded, whereby appellee received the injuries complained of.

The general issue was pleaded.

The real contention of the appellant is that the appellee while engaged as assistant mine examiner, did not come within the class contemplated by the provision of the Mines and Miners' Act.

The paramount question in this case is, did the appellee, at the time of the injury complained of, come within the class designated by the constitution as "operative miners?"

The provision of the constitution upon which the Mines and Miners' Act is based, J. & A., Vol. I p. 187, is, in part, as follows: "It shall be the duty of the legislature to pass such laws as may be necessary for the protection of operative miners, by providing ventilation and constructing safety escapement shafts, or such other appliances as may secure safety in all coal mines."

The paragraph of the statute here involved ("f" of section 14 of chapter 93, J. & A. ¶ 7488), reads as follows: "All cross-cuts connecting inlet and outlet air courses, except the last one nearest the face, shall be closed with substantial stoppings, to be made as nearly air-tight as possible. In the making of the air-tight partition or stoppings, no loose material or refuse shall be used."

It is contended by appellant that the appellee, at the time of the accident complained of, was not a miner engaged in digging coal, but that he was at the time an employe, having been assigned to the duty of assistant examiner of mines, and, therefore, does not come within the class described as "operative miners," and construes the statute as applying only to those engaged in digging coal.

The statute makes it the duty of all persons or corporations operating coal mines to employ a mine examiner, and the duties of such mine examiner are fixed by statute (section 21, chapter 93, entitled "Mines and Miners," J. & A. ¶ 7495) and are as follows:

(1) "To examine the underground workings of the

mine within twelve hours preceding every day upon which the mines are to be operated.''

(2) ''When in the performance of his duties to carry with him a safety lamp in proper order and condition and a rod or bar for sounding the roof.''

(3) ''To see that the air current is traveling in its proper course and in proper quantity; and to measure with an anemometer the amount of air passing in the last cross-cut or break-through of each pair of entries, or in the last room of each division of long wall mines, and at all other points where he may deem it necessary; and to note the results of such measurements in the mine examiner's book kept for that purpose.''

(4) ''To inspect all places where men are required in the performance of their duties to pass or work, and to observe whether there are any recent falls or dangerous roof or accumulations of gas or dangerous obstructions in rooms or roadways; and to examine especially the edges and accessible parts of recent falls and old gobs and air currents.''

(5) ''As evidence of his examination of said rooms and roadways, to inscribe in some suitable place on the walls of each, not on the face of the coal, which chalk, the month and day of the month of his visit.''

(6) ''When working places are discovered in which there are recent falls or dangerous roof or dangerous obstructions to place a conspicuous mark or sign thereat as notice to all men to keep out; and in case of accumulation of gas, to place at least two conspicuous obstructions across the roadway not less than twenty feet apart, one of which shall be outside the last open cross-cut.''

(7) ''Upon completing his examination, to make a daily record of the same in a book kept for that purpose, for the information of the company, the inspector and all other persons interested; and this record shall be made each morning before the miners are permitted to enter the mine.''

(8) "To take into his possession the entrance checks of all men whose working places have been shown by his examination and record to be dangerous, and to give such entrance checks to the mine manager before the men are permitted to enter the mine in the morning."

A careful study of this section and all of its provisions discloses the fact that it is there made the duty of the mine examiner to examine the workings of the mine within twelve hours preceding every working day in the mine; to carry a safety lamp properly equipped; to see that the air current is traveling properly; to measure the amount of air passing in the last crosscut or break-through; to inspect all places where men are required, in the performance of their duties, to pass or work; to observe whether there are any recent falls, dangerous roof or accumulation of gas; to place conspicuous marks or signs in places where there are recent falls or dangerous roof, and in case of an accumulation of gas, to place conspicuous obstructions across the roadway, one of which shall be outside the last open cross-cut, and to make a daily record of all of the above in a book kept for that purpose, for the information of the company, the inspector and all other persons interested, and that this record shall be made each morning before the miners are permitted to enter the mine.

This examination of the section convinces us that it was passed by the legislature as being in compliance with the requirement of the provision of the Constitution above quoted, namely, "to pass such laws as may be necessary for the protection of operative miners." It is evident this employe of the appellant was employed for the purpose of examining the mine as required by said section 21, J. & A. ¶ 7495, in order that the operative miners might know, before they entered the mine, that it was safe. He is the agency designated by the legislature to see that the mine is safe for the operative miners. This law was not passed

for the protection of the man who was required to make the examinations, but for the protection of those whom the Constitution made it the duty of the legislature to protect by statute. The very purpose of his employment was that he should go into the mine in advance of the miners and ascertain whether or not it was safe from the dangers from which it was the legislative duty to protect them.

It is a matter of universal knowledge that employment in a coal mine is a dangerous occupation, and when appellee accepted employment as an examiner he knew it was a dangerous position to fill, or he would not be required. He knew all of the requirements of the law as to the duties to be performed by him, and when he accepted such employment he assumed all of the dangers incident to such employment. He was not an operative miner, but was the means selected by the legislature in the passage of the law, under the constitutional rquirement, for the protection of the operative miners.

The declaration herein is grounded alone upon the failure of the appellant to comply with a statutory requirement which was only applicable to operative miners. No common law duty of the appellant is counted upon, and no allegation is made as to the duty of the appellant to use reasonable care to give to the appellee a safe place in which to perform his labor, and to allege a failure of such duty.

But even if there had been such allegation of neglect of a common law duty of appellant towards appellee, the evidence would not be such as to warrant a judgment in his favor. The evidence clearly discloses that appellee, at the time of the accident, was making his examination of the mine with an open lamp. He was at the time in the mine looking for any accumulation of gas, lack of air, loose roof or any other dangers that might lurk there. He knew he was likely to encounter, as he did, an accumulation of gas at any time, and for him to proceed to make an examination with an

open lamp was inexcusable carelessness. The section of the Mines and Miners' Act here involved was not enacted for his protection.

Counsel for the appellant, at the close of the evidence, asked the court to give a peremptory instruction to the jury, directing them to find the issues for the appellant, defendant below, but this was refused and this action of the court is here assigned as for error.

Under the view we are compelled to take of this case, we think it was error for the court to have refused to give the peremptory instruction, for the reason the declaration was based solely on a statute which the evidence shows was not applicable to the appellee in his employment.

For the reason above stated, the judgment of the trial court is reversed.

*Reversed.*